United States District Court
Southern District of Texas
FILED
MAY 02 2016
Clerk of Court

United States District Court
Southern District of Texas
ENTERED
May 03, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| VERONICA NEVAREZ<br>Plaintiff | §<br>§<br>§<br>§ | |
| vs. | §<br>§<br>§ | CIVIL ACTION NO. M-15-313 |
| CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF THE SOCIAL<br>SECURITY ADMINISTRATION<br>Defendant | §<br>§<br>§<br>§ | |

## REPORT & RECOMMENDATION

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g). After this case was transferred from the Corpus Christi Division to the McAllen Division, the case was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b). Pending before the Court are the parties' motions for summary judgment, with briefs in support. (Dkt. Entry Nos. 16; 18.) Defendant also filed a response to Plaintiff's motion for summary judgment. (Dkt. Entry No. 20.) This case is ripe for disposition on the record.

Based on a review of the pleadings, record, and relevant law, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment (Dkt. Entry No. 16) be **DENIED**, Defendant's Motion for Summary Judgment (Dkt. Entry No. 18) be **GRANTED** to the extent it is consistent with this Report, the Commissioner's final decision to deny benefits be **AFFIRMED**, and the case be closed.

## I. BACKGROUND

Plaintiff filed for disability insurance and supplemental security income benefits in September 2013. (R. 13.) Plaintiff's application was denied initially and upon

1

reconsideration. (*Id.*) An administrative Law Judge ("ALJ") issued an unfavorable opinion denying benefits in January 2015, and the Appeals Council denied Plaintiff's request for review. (Dkt. Entry No. 16-1 at 1.)[1]

At the time of the proceeding, Plaintiff was a "younger individual" (born 1972) with an ability to communicate in English and a limited education, and her past relevant work included work as a cashier, caterer, sales person, and cook. (R. 28). Plaintiff's alleged impairments included: sciatica,[2] right knee arthralgia (joint pain or aches), bilateral carpal tunnel syndrome, asthma, obesity, migraines, depression, mood disorder, post-traumatic stress disorder ("PTSD"), and anxiety. (*See, e.g.*, Dkt. Entry No. 16-1 at 2.)

## II. STANDARD OF REVIEW

So long as the courts provide each party the opportunity to present his contentions in support of his claim and enter judgment only on the basis of the pleadings and transcript of the record, summary judgment is an acceptable device in cases seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g) of the Act. *Flores v. Heckler*, 755 F.2d 401, 403 (5th Cir. 1985); *Lovett v. Schweiker*, 667 F.2d 1, 2 (5th Cir. 1981). However, this

---

[1] Docket entry page numbers refer to the electronically-assigned PDF page number via CM-ECF upon opening the entire file. Page numbers from the administrative record refers to the Bates-stamped page number.

[2] According to the definition available on the Mayo Clinic website:

Sciatica refers to pain that radiates along the path of the sciatic nerve, which branches from your lower back through your hips and buttocks and down each leg. Typically, sciatica affects only one side of your body.

Sciatica most commonly occurs when a herniated disk, bone spur on the spine or narrowing of the spine (spinal stenosis) compresses part of the nerve. This causes inflammation, pain and often some numbness in the affected leg.

Court's review of the Commissioner's final decision to deny benefits under the Act, per 42 U.S.C. § 405(g), is limited to two inquiries: (1) whether the proper legal standards were used in evaluating the evidence; and (2) whether there is substantial evidence in the record as a whole to support the decision that the claimant is not disabled as defined by the Act. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).

Under the second permissible inquiry, substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). It is more than a scintilla, but less than a preponderance. *Id.* If the findings of the Commissioner are supported by substantial evidence in the record as a whole, the findings are conclusive and must be affirmed. *Brown*, 192 F.3d at 496. Under this standard of review, this Court must carefully scrutinize the record to determine if such evidence is present. *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988) (per curiam). However, evidentiary conflicts are for the Commissioner, not the courts, to resolve, and courts "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute our own judgment for that of the [Commissioner], even if the evidence preponderates against the [Commissioner's] decision." *Brown*, 192 F.3d at 496 (alteration in original) (quoting *Johnson*, 864 F.2d at 343). This Court's judicial review is deferential to the Commissioner's decision, but without being so obsequious that it renders the review meaningless. *Id.*

Although the reviewing court does not reweigh the evidence or try the issues de novo, the court *does* analyze the evidence in determining whether substantial evidence exists, *e.g., Leggett*, 67 F.3d at 564 (explaining that substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion), and, where relevant, in determining whether errors are harmful or prejudicial, *see, e.g., Morris v. Bowen*, 864 F.2d 333,

3

335 (5th Cir. 1988) ("[P]rocedural improprieties . . . will therefore constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision."); *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984) (explaining that, where an ALJ fails to fairly develop the record and facts, the claimant must show prejudice to justify a remand, which requires a showing the ALJ could and would have adduced evidence that might have altered the result, had the ALJ developed the record fairly and fully).

### III. ESTABLISHING DISABILITY

A plaintiff is not entitled to benefits under Titles II and XVI unless he is "disabled" as defined by the Act. 42 U.S.C. § 423 (d)(1)(A); *Heckler v. Campbell*, 461 U.S. 458, 459–61 (1983). The law and regulations governing benefits under both Titles are the same. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A sequential five-step approach is used to determine whether the claimant qualifies as disabled. *See* 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proving the first four steps to show that: (1) he is not presently engaged in substantial gainful activity; (2) he has a severe impairment; (3) the impairment is either listed or equivalent to an impairment listed in the appendix to the regulations; and, (4) if the impairment is not equivalent to one listed in the regulations, the impairment still prevents him from performing past relevant work. *Leggett*, 67 F.3d at 564 n.2. Once the claimant proves the first four steps, the burden shifts to the Commissioner to establish that the claimant can perform substantial gainful employment available in the national economy. *Greenspan*, 38 F.3d at 236–37. The burden

then shifts back to the claimant to rebut this finding. *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). A determination at any step that the claimant is or is not disabled within the meaning of the Act ends the inquiry. *Leggett*, 67 F.3d at 564.

In this case, the ALJ made the following findings: (1) Plaintiff has not engaged in substantial gainful activity since the alleged onset (R. 15); (2) Plaintiff's sciatica, right knee arthralgia, bilateral carpal tunnel syndrome, asthma, obesity, migraines, depression, mood disorder, PTSD, and anxiety are severe impairments (R. 15); (3) however, the medically determinable severe impairments do not meet or medically equal one of the impairments listed in the appendix to the regulations (R. 16); (4) she retains the residual functional capacity ("RFC") to perform sedentary work with the following physical limitations: she can occasionally stoop, kneel, crouch, and crawl; her work cannot involve repetitive fine-finger movements bilaterally; she cannot climb ladders, ropes, or scaffolds, or work at unprotected heights or around dangerous moving machinery; she must work in a clean work environment free of odors, dusts, gases, or poor ventilation; and, as far as the mental component, she has the RFC to understand, remember, and carry out simple work, make simple decisions, and attend and deal appropriately with work-place peers and bosses with occasional routine work changes (R 18); Plaintiff is unable to perform any past relevant work (R. 28); and, (5) relying in part on the testimony of a vocational expert, Plaintiff has the ability to perform other work existing in significant numbers in the national economy, including the following representative sedentary, unskilled occupations: inspector; call operator, and charge account clerk (R. 28–29). The ALJ then found that Plaintiff had not been under a disability from August 10, 2013, through the date of the decision. (R. 29).

## IV. APPLICABLE LAW & ANALYSIS

The undersigned does not summarize the entirety of the administrative proceedings and record. Rather, the undersigned addresses the primary issue and evidence disputed by the parties.

Plaintiff argues that the ALJ's analysis of an opinion from a treating psychologist does not comport with the requirements of 20 C.F.R. § 404.1527 and *Newton*, 209 F.3d at 453, which held that "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527." (*See* Dkt. Entry No. 16-1 at 5–7.) In the brief in support of her motion for summary judgment, Plaintiff describes the relevant opinion evidence and findings by the ALJ as follows:

> On December 3, 2014, Plaintiff's treating psychologist, Amanda Morrice-McBride, PsyD, completed a Medical Opinion Questionnaire related to Plaintiff's Mental Impairments. (Tr. 425-27). Dr. McBride noted that she was seeing Plaintiff three times a month for one hour psychotherapy appointments due to Plaintiff's post-traumatic stress disorder (PTSD) and major depressive disorder, recurrent, severe.[3] (Tr. 425). Dr. McBride opined that based on her examination and time spent with Plaintiff during psychotherapy, Plaintiff's prognosis was poor. (Tr. 425). Dr. McBride opined that Plaintiff would be seriously limited but not precluded in her abilities to: interact appropriately with the general public; maintain socially appropriate behavior; sustain an ordinary routine without special supervision; ask simple questions or request assistance; and be aware of normal hazards and take appropriate precautions. (Tr. 425-26). In all other areas of mental abilities and aptitude needed to do any job, Dr. McBride opined that Plaintiff has no useful ability to function. (Tr. 425-26). In support of these opinions, Dr. McBride noted that Plaintiff is experiencing PTSD related to a history of sexual abuse of self and her children with long-term depressive symptoms, as well as physical pain. (Tr. 427). Based on her knowledge of Plaintiff's impairments and treatment plan, Dr.

---

[3] Defendant contends that Plaintiff misstates the frequency of the treatment, pointing out that the record reflects that Plaintiff's therapy sessions with Dr. McBride were far less frequent: over a 55-week period, Plaintiff saw Dr. McBride an average of once every three weeks, not three times per month as alleged. (Dkt. Entry No. 20 at 2, fn.1.)

>McBride further opined that Plaintiff would be absent from work more than twice a month. (Tr. 427).
>
>In evaluating the opinion evidence of record, the ALJ found Dr. McBride's opinions contained in the Medical Opinion Questionnaire warranted "little weight" because the "extreme opined limitations are unsupported by the record as a whole, which indicates non-compliance with psychotropic medications for nearly a year after her alleged onset date, improvement in symptoms with medications, and overwhelmingly normal mental status exams." (Tr. 26). Rather, the ALJ gave "partial weight" to the opinions of Plaintiff's treating source Jessica P. Wilson, APRN-PMH, and consultative examiner, Raul R. Capitaine, MD, PA, in addition to the "great weight" he gave to the opinions of the non-examining medical expert, Sharon Rogers, PhD, and DDS physicians. (Tr. 27).

(Dkt. Entry No. 16-1 at 4–5.)

Plaintiff argues that "based on the criteria set forth in the regulations for evaluating a treating physician's medical opinion and the absence of any controverting opinion evidence from a treating or examining source, Dr. McBride's medical opinions of record warranted controlling weight." (*Id.* at 7.)

Defendant argues in response that the ALJ did not err in failing to give controlling weight to the opinion of Dr. McBride. (Dkt. Entry No. 20 at 1.) Also, Defendant contends that *Newton* is inapplicable here because there is "competing first-hand medical evidence" that obviated the need to do a more detailed analysis of the factors under § 404.1527, per *Newton*'s instruction, and the ALJ did not summarily reject the opinion of Dr. McBride based only on the testimony of a non-speciality medical expert because the medical expert who testified at Plaintiff's hearing was a mental health specialist (*see* R. 41). (Dkt. Entry No. 20 at 1–2.)

The regulations require the Commissioner to evaluate every medical opinion it receives, regardless of its source. 20 C.F.R. § 404.1527(d). "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the

7

nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Generally, more weight is given to an opinion of a treating physician than to those given by other medical professionals, such as examining physicians and medical experts. *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001). The Fifth Circuit has consistently held that "[o]rdinarily, the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." *Id.* (quoting *Greenspan*, 38 F.3d at 237). At the same time, an ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. *Newton*, 209 F.3d at 455 (citation omitted).

Under the regulations, if a treating physician's opinion as to the nature and severity of a claimant's impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not otherwise inconsistent with other substantial evidence in the record, the treating source's opinion should be given controlling weight. 20 C.F.R. § 404.1527(d)(2).

Medical opinions are not conclusive, however, because the ALJ has the ultimate responsibility of determining disability status. *Myers*, 238 F.3d at 621. Thus, when good cause is shown, less weight, little weight, or even no weight may be given to a treating physician's opinion. *Id.* "Good cause" may exist if the treating physician's opinion or statement is brief and conclusory, not supported by medically acceptable clinical and laboratory diagnostic techniques, or otherwise unsupported by the evidence. *Id.* Under Fifth Circuit precedent, if the ALJ finds that:

8

> treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

*Newton*, 209 F.3d at 456 (emphasis in the original) (quoting SSR 96-2p). "[A]bsent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527." *Id.* at 453. Those factors include: (1) the physician's length of treatment of the claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; (6) the specialization of the treating physician; and, (7) any other considerations. 20 C.F.R. § 404.1527(c).

Finally, an "ALJ cannot reject a medical opinion without an explanation." *Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir. 2000). However, the absence of an express statement in the ALJ's written opinion about the weight accorded to a particular opinion does not necessarily amount to reversible error. *See, e.g., Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (explaining that bare conclusions are sometimes beyond meaningful judicial review but also acknowledging that an ALJ is not required to do an exhaustive point-by-point discussion of the evidence); *Loza*, 219 F.3d at 395 (concluding that "[n]o good cause appears in the ALJ *opinion* or *in the record* to justify the ALJ's failure to give 'considerable weight' to the treating doctors' medical evidence") (emphasis added).

The undersigned concludes that the ALJ did not err as alleged. Initially, the undersigned points out that the ALJ's written decision is very comprehensive. The written decision includes a detailed discussion of the evidence, including the medical opinion evidence, and clearly sets forth the reasoning underlying the ALJ's findings.

Having reviewed the written decision, it is apparent the ALJ touched on most, if not all, of the factors listed in § 404.1527(c).[4] The ALJ's written decision explains that, upon Plaintiff's initial contact with Dr. McBride, the doctor conducted a "psychotherapy assessment," and the ALJ explains with clarity the dates of Plaintiff's ongoing counseling with Dr. McBride, the nature and goals of the therapy (*i.e.*, coping skills and her children's behavior), and describes some of the contents of Dr. McBride's progress notes. (R. 23-25.) *See* 20 C.F.R. § 404.1527(c) (explaining that four of the seven factors are the physician's length of treatment of the claimant, the physician's frequency of examination, the nature and extent of the treatment relationship, and the specialization of the treating physician). The ALJ discussed the medical opinion Dr. McBride completed in December 2014, and the ALJ explained that he was giving "little weight" to the opinion, concluding that Dr. McBride's "extreme opined limitations are unsupported by the record as a whole, which indicates non-compliance with psychotropic medications for nearly a year after her alleged onset date, improvement of symptoms with medications, and overwhelmingly normal mental status exams." (R. 25-26.) *See* 20 C.F.R. § 404.1527(c) (explaining that the three other factors are: the support of the physician's opinion afforded by the medical evidence of record, the consistency of the opinion with the record as a whole, and "any other considerations").

---

[4] Defendant points to many examples in making its arguments (Dkt. Entry No. 20 at 2-3.)

In making the RFC determination and evaluating Plaintiff's credibility and subjective complaints, the ALJ discussed the medical evidence for both the physical and mental aspects of Plaintiff's claim for benefits. (R. 18-24.) The ALJ found, in relevant part, that while Plaintiff is "somewhat limited by her depression, mood disorder, anxiety and PTSD, the record as a whole does not support a finding that the claimant is unable to sustain work on a regular and continuing basis due to her mental impairments." (R. 24.) The ALJ stated that the "record contains multiple inconsistencies between the degree of severity the claimant alleges and the objective findings in her treatment notes." (R. 24.) These disparities included the fact that "the claimant failed to take her prescribed psychotropic for a significant period since her alleged onset date," even though she had an acknowledged history of improvement with mental-health medications and reported improvement when she finally started taking them around August 2014. (R. 24-25.) The ALJ found "there are no extenuating factors that are evident in this case that would prevent the claimant from compliance with her prescribed medications and treatment." (R. 24.) The ALJ also explained that, "although her mental status exams show depressed mood and affect, they otherwise reflect generally normal findings," which included records from three different providers who found, upon examination, that Plaintiff had good judgment and insight, was properly oriented, had normal thought processes, had a good appearance, was generally articulate and intelligent, etc. (R. 25.) The ALJ concluded that these "normal mental status exams are inconsistent with the claimant's allegations regarding the alleged degree of severity and limitations from her depression, mood disorder, anxiety, and PTSD." (R. 25.) The ALJ also explained why the varying Global Assessment Functioning ("GAF") scores in the record were not as convincing as other evidence in

11

the record—namely, that GAF scores provide only a snapshot of her condition and do not necessarily relate to the ability to hold a job. (R. 26–27.)

In light of the foregoing, any suggestion that the ALJ was not mindful of the factors under § 404.1527(c) when he discussed the opinion evidence or made his findings does not hold water. *See Jones v. Colvin*, No. 15-30298, 2016 WL 158016, at *4 (5th Cir. Jan. 13, 2016) (not designated for publication) (reading the ALJ's written decision through a broad lens and concluding that the written decision adequately reflected that the ALJ had considered the factors); *Loza*, 219 F.3d at 395 (concluding that "[n]o good cause appears in the ALJ opinion or in the record to justify the ALJ's failure to give 'considerable weight' to the treating doctors' medical evidence"); *see also Audler*, 501 F.3d at 448 (explaining that bare conclusions are sometimes beyond meaningful judicial review but also stating that an ALJ is not required to do an exhaustive or formulaic point-by-point discussion of the evidence). Moreover, the foregoing demonstrates that the ALJ had ample "good cause"—and, for the purposes of judicial review, ample substantial evidence to support his decision—to give little weight to Dr. McBride's opinions from December 2014, as they were not supported by the evidence as a whole, such as the evidence of Plaintiff's non-compliance with her psychotropic medication, the evidence of improvement when she takes the medications, "the overwhelmingly normal mental status exams," and Plaintiff's unsubstantiated complaints of debilitating symptoms and limitations related to her psychiatric impairments. (R. 25–26.) *See, e.g., Myers*, 238 F.3d at 621 (explaining that, when "good cause" is shown, little to no weight may be given to a treating physician's opinion and stating that "good cause" may exist if the treating physician's opinion or statement is brief and conclusory, not supported by medically acceptable clinical and laboratory diagnostic techniques, or *otherwise*

12

*unsupported by the evidence*) (emphasis added); *see also Loza*, 219 F.3d at 395 (concluding that "[n]o good cause appears in the *ALJ opinion* or *in the record* to justify the ALJ's failure to give 'considerable weight' to the treating doctors' medical evidence") (emphasis added). For those same reasons, the ALJ was not required to give *controlling weight* to Dr. McBride's opinions from December 2014. *See, e.g.,* 20 C.F.R. § 404.1527(c)(2) ("If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.").

The undersigned concludes alternatively that the ALJ did not err under *Newton*. The ALJ made it clear that Dr. McBride's opinions were not consistent with the normal mental status exam results in the record and were not entitled to greater weight in light of Plaintiff's admitted lack of compliance with her psychotropic medications and documented reports that her conditions/symptoms improved when she took them. Both of those bases amount to proper competing, first-hand medical evidence that obviated the need to do the "detailed analysis" Plaintiff argues should have been done under *Newton*. *See, e.g., Jones*, No. 15-30298, 2016 WL 158016, at *4 ("Furthermore, this Court has also held that ALJs are not required to consider the § 404.1527(c) factors before dismissing a treating physician's opinion if there is competing first-hand *medical evidence* contradicting that opinion.") (emphasis added) (citing *Newton*, 209 F.3d at 458; *Hamilton-Provost v. Colvin*, 605 F. App'x 233, 240 (5th Cir. 2015); *Qualls v. Astrue*, 339 F. App'x 461, 466–67 (5th Cir. 2009); *Zimmerman v. Astrue*, 288 F. App'x 931, 935 (5th Cir. 2008)). Contrary to Plaintiff's statement of the law in her brief, *Newton* does not require "the absence of any controverting ***opinion*** evidence from a treating or examining source." (Dkt.

Entry No. 16-1 at 7.) Instead, *Newton* focuses on the absence of controverting *medical* evidence, which is the express language used in *Newton* and borne out by subsequent case law.

Nor was the ALJ required to weigh the medical opinion evidence in a vacuum. *See Myers*, 238 F.3d at 621 (explaining that medical opinions are not conclusive because the ALJ has the ultimate responsibility of determining disability status). The ALJ was permitted to evaluate Plaintiff's claim for benefits and the strength of the opinion evidence in light of any evidence showing a lack of treatment or "non-compliance" with medications, which he did. *See Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990) (stating that, as a general rule, the ALJ is not precluded from relying upon the lack of treatment as an indication of non-disability); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987) ("A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling."). The ALJ was permitted to evaluate the medical opinion evidence in light of Plaintiff's own statements (such as to medical providers or in her disability application paperwork) and testimony at the hearing and the ALJ's adverse credibility/symptomology finding, which he did. (R. 17; 19; 24-25.) *See Leggett*, 67 F.3d at 566 (pointing to the claimant's own testimony as one of the reasons that supported a finding of "good cause" to reject a treating physician's opinion). Indeed, the factors under § 404.1527(c) permit these considerations because the ALJ is instructed to consider, among other factors, "the support of the physician's opinion afforded by the medical evidence of record," "the consistency of the opinion with the record as a whole," and "any other considerations."

The undersigned also points out that Plaintiff seems to be arguing, at least in part, that the ALJ should have done a more *thorough* analysis of the factors under § 404.1527(c), and she gives many examples of how Dr. McBride's opinions could have been evaluated differently under the

relevant considerations. (Dkt. Entry No. 16-1 at 6–7.) However, all of Plaintiff's arguments boil down to a simple dispute with the ALJ's resolution of the evidence, which does not provide a tenable basis for remanding Plaintiff's case when the record shows that (1) the ALJ applied the proper legal standards and (2) the overall decision is supported by substantial evidence. *See, e.g., Brown*, 192 F.3d at 496 (stating that evidentiary conflicts are for the Commissioner, not the courts, to resolve).

In arguing that the ALJ erred in his treatment of Dr. McBride's opinions from December 2014, Plaintiff argues that it "is important to note that the ALJ's rationale for providing only 'little weight' to Dr. McBride's opinions because they were 'unsupported by the record as a whole, which indicates non-compliance with psychotropic medications for nearly a year after her alleged onset date, improvement in symptoms with medications, and overwhelmingly normal mental status exams,' is the same rationale that the ALJ provided for giving only partial weight to the opinions of Dr. Capitaine, the consultative psychological examiner, and Nurse Wilson, Plaintiff's treating registered nurse at Oasis Counseling." (Dkt. Entry No. 16-2 at 7–8.) According to Plaintiff, "the substantial evidence of record has been provided by these three treating and examining sources, and it appears that the ALJ has improperly used an all-encompassing statement to reject those opinions for which he does not believe support his RFC determination and instead substituted his own medical conclusions." (*Id.* at 8.) Plaintiff argues the ALJ was "picking and choosing" the evidence in a manner that supported a denial of benefits.

Contrary to Plaintiff's argument, the undersigned does not view the ALJ's treatment of the opinion evidence as a sign the ALJ was "picking and choosing" only the evidence that supported his position. (*See id.*) As was already discussed, it was proper under the relevant legal standards

for the ALJ to give less weight to all of the mental-health opinion evidence in this case based on the exact same rationale in each instance. The ALJ did not pull his reasons out of thin air in this case. Instead, Plaintiff's unjustified non-compliance with her psychotropic medication, the evidence of improvement when she takes these medications, and the "overwhelmingly normal mental status exams" are permissible reasons under the relevant law for discounting medical opinions and, in this case, are substantially supported by the record.

As a final matter, the undersigned has reviewed Defendant's summary judgment motion and the record and concludes the final decision is supported by substantial evidence. The substantial evidence includes the ALJ's adverse credibility/symptomology finding, the mental and physical RFC forms completed by the agency physicians, the medical experts' testimony, the vocational expert's testimony, the objective medical evidence showing that Plaintiff's mental health condition is responsive to treatment, that Plaintiff does not comply with her psychotropic medication regime and does not adequately treat her asthma (and continues to smoke cigarettes), the lack of objective medical findings and evidence to support the alleged severe, disabling physical and mental limitations, the records from treating and examining sources that reflect many relatively normal examination results (physically and mentally), and Plaintiff's activities, such as caring for and home schooling her children, performing household chores, running errands, preparing simple meals, and spending time with her family and a friend. (*See* R. 16–29; Dkt. Entry No. 18-1 at 4–9.)

In summary, the undersigned finds that the ALJ did not reversibly err as alleged by Plaintiff, and a remand is not warranted on this ground. The undersigned also finds that the decision to deny benefits is supported by substantial evidence, as argued by Defendant and as

supported by a review of the ALJ's decision and the record, and the decision to deny benefits should be affirmed.

## V. CONCLUSION

### *Recommended Disposition*

Based on a review of the pleadings, record, and relevant law, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment (Dkt. Entry No. 16) be **DENIED**, Defendant's Motion for Summary Judgment (Dkt. Entry No. 18) be **GRANTED**, the Commissioner's final decision to deny benefits be **AFFIRMED**, and the case be closed.

### *Notice to the Parties*

Within 14 days after being served a copy of this report, a party may serve and file specific, written objections to the proposed recommendations. A party may respond to another party's objections within 14 days after being served with a copy thereof. The district judge to whom this case is assigned shall make a *de novo* determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the District Court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the District Court, except on grounds of plain error or manifest injustice.

The clerk of this Court shall forward a copy of this document to the parties by any receipted means.

**DONE** at McAllen, Texas, this 2nd day of May, 2016.

_____
Dorina Ramos
UNITED STATES MAGISTRATE JUDGE